**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:11-CV-00475-M**

**KFC CORPORATION**                                                                                              **PLAINTIFF**

**V.**

**KUBAIR M. KAZI, LOUISIANA RESTAURANT
GROUP, INC., KAZI FOODS, INC., and
KHATIJA KAZI a/k/a KHATIJA KAZI**                                                            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Enforce the Parties' Settlement Agreement [DN 31]. Fully briefed, this matter is ripe for decision.

**I. BACKGROUND**

Defendants are franchisees of KFC Corporation ("KFCC"). They operate numerous KFC restaurants across the United States. In August 2011, KFCC brought this lawsuit against Defendants, alleging that they violated their franchise agreements with respect to certain restaurants operated in California, Louisiana, and Colorado. (See Compl. [DN 1] 17–19.) Thereafter, the parties engaged in significant settlement discussions, ultimately executing a Settlement Agreement on May 8, 2012. The Settlement Agreement was made part of an Agreed Judgment [DN 30] in this case, ensuring that the Court would retain jurisdiction to resolve any disputes related to the settlement.

As part of the Settlement Agreement, the parties executed Limited Term Successor Franchise Agreements, which allowed Defendants to operate their restaurants in Colorado through November 30, 2012. (Settlement Agreement ¶ 3(b).) The Settlement Agreement provided that this date was an absolute deadline for closing any sale of the Colorado restaurants. (Id.) The Settlement Agreement also contained deadlines by which a fully executed purchase and sale contract–namely, an "Asset

Purchase Agreement" or an "APA"–had to be submitted for KFC's review. If the proposed buyer **was not** an existing KFC franchisee in good standing, Defendants were required to submit an APA no later than seventy-five days prior to the closing date. (Id ¶ 3(c)-(d).) If the proposed buyer **was** an existing KFC franchisee in good standing, Defendants were required to submit an APA no later than forty-five days prior to the closing date. (Id ¶ 3(e).) In addition to these deadlines, the Settlement Agreement contained a non-waiver clause. This clause provided:

> No term or provision of this Agreement shall be deemed waived by any action or inaction of the Parties and no breach excused, unless such waiver or consent shall be in writing, signed by the party claimed to have waived or consented, and expressly referring to this Paragraph. Any consent by any party to, or waiver of, any breach by the other, whether express or implied, shall not constitute consent to, waiver of, or excuse for any other different or subsequent breach.

(Id. ¶ 31.) In the event that the Colorado restaurants were not sold by November 30, 2012, the Settlement Agreement required Defendants to close them by December 31, 2012. (Id. ¶ 3(j).)

**First APA.** Defendants sent an APA to KFCC on October 15, 2012. This APA provided that Defendants would sell the Colorado restaurants to Mr. Chaudhry Ali for $1,200,000 to be paid by a promissory note. (First APA [DN 31-5] ¶ 2.1.) That same day, KFCC informed Defendants that it would not approve the sale of the Colorado restaurants under the First APA's terms because the First APA called for 100% financing and this did not meet KFCC's financial requirements. (E-mails Dated Oct. 15–18, 2012 [DN 31-8] 2.) Failure to meet financial requirements was specified in the Settlement Agreement as a ground to withhold approval. (See Settlement Agreement ¶ 3(f)(2).)

**Second APA.** Upon learning of the rejection of the First APA, Defendants returned to Mr. Ali to renegotiate the financing terms. Defendants submitted a Second APA to KFCC for approval on October 26, 2012. This APA provided that Defendants would sell the Colorado restaurants to Mr. Ali and a business partner, Mr. Bilal Ruknuddeen, for $600,000, with Mr. Ali and Mr. Ruknuddeen

paying 20% by the time of closing. (Second APA [DN 35-10] ¶ 2.1.) On October 30, 2012, KFCC notified Defendants that it would not approve the sale of the Colorado restaurants under the Second APA's terms since Mr. Ruknuddeen was not an existing KFC franchisee in good standing and since any APA including such a purchaser had to be submitted at least seventy-five days in advance of the closing date. (E-mail from Tim Rook Dated Oct. 30, 2012 [DN 31-12].)

**Third APA.** Upon learning of the rejection of the Second APA, Defendants returned to Mr. Ali to renegotiate as to his business partner. On November 13, 2012, Defendants submitted a Third APA to KFCC for approval. This APA provided that Defendants would sell the Colorado restaurants to Mr. Ali for $600,000, with Mr. Ali paying 20% by the time of closing. (Third APA [DN 35-13] ¶ 2.1.) On November 14, 2012, KFCC notified Defendants that it would not approve the sale of the Colorado restaurants under the Third APA's terms since the APA had to be submitted at least forty-five days in advance of the closing date. KFCC further notified Defendants that they must close the restaurants by December 31, 2012. (E-mail from Peggy Grant Dated Nov. 14, 2012 [DN 31-3].)

## II. DISCUSSION

The Settlement Agreement provides that any proposed buyer of the Colorado restaurants "must be approved by and acceptable to KFCC." (Settlement Agreement ¶ 3(f).) It further provides that "approval will not be unreasonably withheld." (Id.) Defendants argue that KFCC unreasonably withheld approval of the Third APA and that KFCC should thus be ordered to approve the sale of the Colorado restaurants under the Third APA's terms. (See Defs.' Mem. of Law in Supp. of Their Mot. to Enforce the Parties' Settlement Agreement [DN 31-1] 8, 10.) According to Defendants, the Settlement Agreement does not require that the proposed sale be approved by KFCC forty-five days before the November 30, 2012 closing deadline; instead, it only requires Defendants to submit their

initial proposal by that date. (Id. at 4.) Therefore, since Defendants submitted the First APA to KFCC on October 15, 2012, in advance of the forty-five day deadline, the Third APA was timely. (Id. at 9.) Defendants highlight that the proposed buyer, Mr. Ali, has not changed since the First APA was submitted. They further highlight that KFCC did not refuse the Second APA on the ground that it was submitted less than forty-five days before the November 30, 2012 closing date. (Id.)

The Court disagrees with Defendants' position. In this case, the evidence shows that KFCC justifiably rejected each of Defendants' three APAs. The Court will address each APA in turn. The First APA was not approved because Mr. Ali did not meet KFCC's financial requirements. Failure to meet financial requirements was specified in the Settlement Agreement as a ground to withhold approval. (See Settlement Agreement ¶ 3(f)(2).) Thus, KFCC was justified in its rejection of this APA. The Second APA was not approved because Mr. Ruknuddeen was not an existing KFC franchisee in good standing. The Settlement Agreement required any APA including such a purchaser to be submitted at least seventy-five days before the closing date. (See id. ¶ 3(c)-(d).) Since the Second APA was submitted after this period, it was untimely and KFCC's rejection of it was justified. The Third APA was not approved because it was submitted on November 13, 2012. The Settlement Agreement required any APA including a proposed buyer that was an existing KFC franchisee in good standing to be submitted at least forty-five days before the closing date. (See id. ¶ 3(e).) Since the Third APA was submitted after this period, it was untimely and, again, KFCC was justified in rejecting it. In short, the Court concludes that each APA was noncompliant with either the Settlement Agreement's express deadlines or its bargained-for conditions. KFCC's withholding approval of these APAs was not unreasonable.

To the extent that Defendants argue that the Third APA acquired the First APA's submission

date, the Court rejects their argument. Kentucky courts have long recognized that a rejection of an offer "leaves the matter as if no offer had ever been made" and "terminate[s] all the . . . existing contractual relations between the parties." N.Y. Life Ins. Co. v. Levy's Adm'r, 92 S.W. 325, 329 (Ky. 1906). Thus, KFCC's rejection of Defendants' First APA terminated that offer, leaving the matter as if no APA had ever been submitted. As a result, the Court must treat the Second APA and the Third APA as entirely separate offers, each with their own terms and their own submission dates. This conclusion is supported by the Settlement Agreement's unambiguous terms. "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003). Here, the parties' agreement provided that an "executed purchase and sale contract" be submitted prior to the deadline. (Settlement Agreement ¶ 3(e).) It did not provide that the deadline would be met if Defendants merely submitted the proposed purchaser's name or an initial purchase and sale contract. In a similar vein, the Court notes that Defendants fail to offer legal authority to support the proposition that the First APA's submission date should somehow transfer to the subsequent APAs.

Additionally, to the extent that Defendants argue that KFCC's continued communications and negotiations with Defendants constitutes a waiver of Defendants' breaches regarding timeliness, the Court rejects their argument. In this respect, the Court finds that any alleged waiver of deadlines is precluded by the parties' non-waiver provision. Under Kentucky law, waiver is "a voluntary and intentional surrender . . . of a known right . . . ." Am. Gen. Home Equity, Inc. v. Kestel, 253 S.W.3d 543, 553–54 (Ky. 2008) (citation omitted). Non-waiver clauses are routinely upheld as enforceable. See, e.g., Universal C. I. T. Credit Corp. v. Middlesboro Motor Sales, Inc., 424 S.W.2d 409, 411

(Ky. 1968) (upholding a non-waiver clause); Home Fin. Co. v. Frazier, 380 S.W.2d 91, 93 (Ky. 1964) (upholding a contract's non-waiver clause and finding that acceptance of delayed payments did not constitute waiver). In this case, the parties expressly included a non-waiver clause in their Settlement Agreement. (Settlement Agreement ¶ 31.) Under this clause, the absence of an express waiver from KFCC precludes a finding of an implied waiver of the deadlines.

Finally, the Court finds it worth noting that Defendants' argument that KFCC acted in bad faith by not approving the Third APA is misplaced. Although Defendants are correct that every contract includes an implied covenant of good faith and fair dealing, see Rainer v. Mount Sterling Nat'l Bank, 812 S.W.2d 154, 156 (Ky. 1991), they seem to overlook that a contract's express terms control. Good faith does not preclude a party from enforcing a contract's terms. See Hunt Enters., Inc. v. John Deere Indus. Equip. Co., 18 F. Supp. 2d 697, 700 (W.D. Ky. 1997) (finding no bad faith when a party withheld approval for an assignment pursuant to a contract's terms); Nat'l Collegiate Athletic Ass'n v. Hornung, 754 S.W.2d 855, 860 (Ky. 1988) (noting that good faith did not constrain the NCAA from exercising its contractual right to reject the approval of a sports announcer). Here, Defendants failed to comply with the Settlement Agreement's express deadlines and bargained-for conditions. Thus, it cannot be said that KFCC acted in bad faith by rejecting Defendants' APAs.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Enforce the Parties' Settlement Agreement [DN 31] is **DENIED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record